UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS COVARRUBIAS,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants. | Case No. 19-cv-01832-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 13 |

In 2012, Plaintiff Alexis Covarrubias ("Plaintiff") purchased a vehicle manufactured by Ford Motor Company ("Ford") from Citrus Motors Ontario Inc. ("Citrus Motors"), a Ford dealership. The vehicle was covered by Ford's express written warranty. The vehicle developed defects during the warranty period that Ford and Citrus Motors could not repair, and Ford did not replace the vehicle or make restitution to Plaintiff. Plaintiff filed suit against both Ford and Citrus Motors (collectively, "Defendants") in state court, asserting five claims against Ford and one claim, for breach of the implied warranty of merchantability, against Citrus Motors. Defendants then removed the action to this Court, alleging that Plaintiff had fraudulently joined Citrus Motors in this case for no reason other than to defeat federal diversity jurisdiction.

Currently before the Court is Plaintiff's motion to remand the case to state court. Docket No. 13 ("Mot."). Because Ford has met its heavy burden of showing that Citrus Motors was fraudulently joined, and the amount-in-controversy requirement for diversity jurisdiction is met, the Court **DENIES** the motion to remand.

**I.     BACKGROUND**

Plaintiff's state court complaint alleges that on June 28, 2012, she purchased a 2012 Ford F-150 vehicle (the "Vehicle") from Citrus Motors. Docket No. 1-1 ("Compl.") ¶ 8. In connection

1 with the purchase, Plaintiff received an express 3-year/36,000 mile bumper-to-bumper warranty and a 5-year/60,000 mile powertrain warranty from Ford. *Id.* ¶ 9. Under the warranty, Ford undertook to maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance. *Id.* If the Vehicle developed a defect and Plaintiff presented the Vehicle to Ford's representative, the representative would repair the defect. *Id.*

Plaintiff's Vehicle developed numerous defects during the warranty period that substantially impaired the use, value, or safety of the Vehicle, including defects related to the engine, transmission, and electrical system. *Id.* ¶ 10. Ford and its representatives "have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities." *Id.* ¶ 11. Despite this, Ford did not "promptly replace the Vehicle or make restitution to Plaintiff." *Id.*

On February 25, 2019, Plaintiff filed her complaint against Defendants in the Santa Clara Superior Court. The complaint asserts various causes of action against Ford, including breach of implied warranty in violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790, *et seq*. *See id.* ¶¶ 8–33. The same cause of action for breach of implied warranty is the only claim asserted against Citrus Motors. *See id.* ¶¶ 29–33.

On April 4, 2019, Defendants filed a notice of removal on the basis of diversity jurisdiction. Docket No. 1 at 1. The notice of removal alleges that there is complete diversity of the parties because Plaintiff is a citizen of California and Ford is a citizen of Michigan and Delaware. *Id.* ¶¶ 18–19. Ford claims that the California citizenship of Citrus Motors does not defeat diversity because Plaintiff named Citrus Motors as a defendant for the sole purpose of preventing removal. *Id.* ¶ 21. Ford further alleges that the amount in controversy exceeds $75,000 based upon the allegations in Plaintiff's complaint. *Id.* ¶¶ 10–17.

Plaintiff moved to remand this case to state court on May 10, 2019. *See* Mot. Defendants oppose the motion. *See* Docket No. 15 ("Opp.").

## II.     LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). District courts have original

2

jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. *Id.* § 1332(a)(1). To properly invoke diversity jurisdiction, the defendant bears the burden of proving that the parties in the action are completely diverse, *i.e.*, that "each plaintiff [is] of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).

The removal statutes are strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted). If a defendant improperly removes a case over which the federal court lacks diversity jurisdiction, the federal court must remand the case to state court. 28 U.S.C. § 1447(c).

Although the removing party must establish complete diversity, "fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "The term 'fraudulent joinder' is a term of art, used for removal purposes, and does not connote any intent to deceive on the part of plaintiff or his counsel." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 n.2 (N.D. Cal. 2001). The Ninth Circuit has recently clarified that there are two ways to establish fraudulent joinder:

> (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Fraudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory. But if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.

*GranCare*, 889 F.3d at 548 (emphasis in original) (internal citations, quotation marks, and alterations omitted). "This standard imposes a very high bar on removing defendants," because joinder is fraudulent "only when it is 'obvious according to the settled rules of the state that [a plaintiff] has failed to state a claim against [a defendant].'" *McAdams, et al. v. Ford Motor Co., et al.*, No. 18-CV-07485-LHK, 2019 WL 2378397, at *4 (N.D. Cal. June 5, 2019) (quoting *Hunter*,

3

582 F.3d at 1046 (alterations in original)).

Thus, courts have found fraudulent joinder "where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant," including where "a plaintiff is barred by the statute of limitations from bringing claims against that defendant." *GranCare*, 889 F.3d at 548 (citations omitted). In contrast, it is not enough to sustain a finding of fraudulent joinder where "a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* at 548–49 (citing *Hunter*, 582 F.3d at 1046).

## III. DISCUSSION

Ford contends that the requirements for diversity jurisdiction are met in this case because (1) Citrus Motors is a dispensable party and should be dismissed from the suit; (2) there is complete diversity between the parties once Citrus Motors is excluded because Plaintiff is a citizen of California and Ford is a citizen of Michigan and Delaware; and (3) the amount in controversy exceeds $75,000 based upon the allegations in the underlying complaint.

### A. Fraudulent Joinder of Citrus Motors

Ford argues that Citrus Motors was fraudulently joined because Plaintiff's sole cause of action against Citrus Motors, for breach of implied warranty under the Song-Beverly Act, is barred by the statute of limitations. *See* Opp. at 4–6.

Pursuant to the Song–Beverly Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The statute of limitations for a Song-Beverly Act action is governed by section 2725 of the California Commercial Code. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1305–06 (2009). Under § 2725:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been

4

discovered.

Cal. Com. Code § 2725(1)–(2). Thus, the statute of limitations is four years from the delivery of the vehicle. *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014). Here, Plaintiff took delivery of the Vehicle on June 28, 2012. Compl. ¶ 8. Plaintiff's cause of action under the Song-Beverly Act accrued on that date, and the statute of limitations expired four years later, on June 28, 2016. However, she did not initiate this action until February 2019. Her claim against Citrus Motors would therefore be barred unless a tolling or similar doctrine applies.

Plaintiff asserts that her claim is not time-barred for several reasons. First, she invokes the "future performance" or "delayed discovery" exception in § 2725(2), which provides that "where a warranty explicitly extends to future performance of the goods, and discovery of the breach must await the time of such performance[,] the cause of action accrues when the breach is or should have been discovered." Cal. Com. Code § 2725(2). Plaintiff reasons that her *implied* warranty claim falls within this exception because Ford provided an *express* warranty that explicitly extends to the Vehicle's future performance. Mot. at 8–9. For this proposition, she relies on the California Court of Appeal decision in *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991), which held that the date of accrual of the statute of limitations may be tolled for attempted repairs within the one-year implied warranty. *Id.* at 211. Although *Krieger* never stated that the statute of limitations in § 2725 can be tolled on an implied warranty claim for the duration of an express warranty, a handful of district courts have read the decision as endorsing that very proposition. *See, e.g.*, *Falco v. Nissan N. Am. Inc.*, No. 13–cv–0686–DDP, 2013 WL 5575065, *10 (C.D. Cal. Oct. 10, 2013) ("Plaintiffs' claims are not timebarred because [the express] five-year warranty tolled the running of the implied warranty's statute of limitations."); *Ehrlich v. BMW of N. Am. LLC*, 801 F. Supp. 2d 908, 924–25 (C.D. Cal. 2010) (same).

However, since *Krieger*, the California Court of Appeal has squarely held that an express warranty does not toll the statute of limitations on an implied warranty claim. The court explained in *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116 (2008) that "[b]ecause an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, . . . it is not a warranty that 'explicitly extends to future performance of the goods'" such

5

that it triggers the future performance exception. *Id.* at 134. Following *Cardinal Health*, the majority of courts—including this Court—has "consistently held" the same. *see, e.g.*, *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 976 (N.D. Cal. 2018) ("The question is whether [plaintiff] may bring a claim for *implied* warranty outside of the presumptive limitations period by operation of the *express* warranty's representations regarding future performance. Although one court has permitted such cross-tolling, . . . it appears to be an outlier.") (emphases in original); *MacDonald*, 37 F. Supp. 3d at 1100 ("[T]he majority view is that the [future performance] exception applies only when the seller has expressly agreed to warrant its product *for a specific and defined period of time*," which by definition excludes an implied warranty.) (emphasis in original) (citation and internal alteration omitted). Accordingly, the future performance exception does not resuscitate Plaintiff's claim.[1]

Second, Plaintiff contends that the "repair doctrine" codified at California Civil Code § 1795.6(b) applies to toll her claim. Mot. at 10. Section 1795.6(b) provides:

> Notwithstanding the date or conditions set for the expiration of the warranty period, such warranty period shall not be deemed expired if . . . (2) the warranty repairs or service performed upon the nonconforming goods did not remedy the nonconformity for which such repairs or service was performed and the buyer notified the manufacturer or seller of this failure within 60 days after the repairs or service was completed.

Cal. Civ. Code § 1795.6(b). As the quoted language indicates, § 1795.6(b) does not toll the statute of limitations on an implied warranty claim, as Plaintiff asserts. Rather, it extends the effective warranty period in the event the buyer notifies the manufacturer or seller of an unsuccessful repair within 60 days of the repair attempt. The warranty period is extended by the number of days from the date upon which the buyer "delivers nonconforming goods to the manufacturer or seller for warranty repairs" up to the date upon which the repaired goods "are delivered to the buyer" or is

---

[1] In contrast, the future performance exception could apply to Plaintiff's breach of express warranty claim against Ford, because Ford's express warranty covers the Vehicle "for a specific and defined period of time." *Cardinal Health*, 169 Cal. App. 4th at 130 (emphasis removed). For instance, if Plaintiff can show that she became aware on a particular date that her Vehicle's defects could not be fixed, her express warranty cause of action warranty would accrue (and the statute of limitations would run for four years) from that date. *See Schick v. BMW of N. Am., LLC*, No. 517CV02512VAPKKX, 2018 WL 6017023, at *6 (C.D. Cal. Sept. 27, 2018). Plaintiff has not asserted a breach of express warranty claim against Citrus Motors.

made "available for the buyer's possession." *Id.* § 1795.6(a); *see Judicial Council of California Civil Jury Instructions* No. 3212 (instructing that under § 1795.6(b), "[t]he time period of an implied warranty is lengthened by the number of days that the [vehicle] was made available by [Plaintiff] for repairs under the warranty.").

Ford fairly points out that Plaintiff's complaint does not allege that she notified Ford or Citrus Motors within 60 days of any attempted repair that the repair was unsuccessful. Opp. at 10–11. However, as courts have repeatedly emphasized, "[t]he standard for demonstrating fraudulent joinder is a high one, and the relevant question is whether it is *possible* for Plaintiff to state a claim . . ., not whether it has been sufficiently pled." *Cavale v. Ford Motor Co.*, No. 118CV00680LJOBAM, 2018 WL 3811727, at *3 (E.D. Cal. Aug. 9, 2018) (emphasis in original). Accordingly, even if the allegations concerning the so-called "repair doctrine" are not sufficiently pled in Plaintiff's current complaint, the burden is still on Ford to show that "Plaintiff would not be able to amend the complaint to allege a viable tolling theory applies to Plaintiff's claim." *Id.*; *see, e.g.*, *Less v. Ford Motor Co.*, No. 18CV1992-MMA (AGS), 2018 WL 4444509, at *3 (S.D. Cal. Sept. 18, 2018); *Vincent v. First Republic Bank Inc.*, No. C 10-01212, 2010 WL 1980223, at *3 (N.D. Cal. May 17, 2010). Here, Plaintiff's complaint alleges that she sought repairs from Citrus Motors on multiple occasions and that Citrus Motors "failed to repair the Vehicle . . . on each occasion." Compl. ¶ 26. Based on that allegation, there is at least a possibility that Plaintiff could show that she notified Citrus Motors of unsuccessful repairs within 60 days after the service was completed, as § 1795.6(b) requires.

However, Plaintiff's invocation of the "repair doctrine" is unsuccessful for another reason. She purchased the Vehicle in June 2012, so the implied warranty expired in June 2013. *See* Cal. Civ. Code § 1791.1(c) (providing that the duration of the implied warranty of merchantability is one year where the duration of the express warranty exceeds one year). But she did not file this suit until February 2019, more than five years later. As noted above, § 1795.6(b) extends an implied warranty by the number of days that the plaintiff made the vehicle available for repairs. That means that for Plaintiff's implied warranty claim to be preserved under § 1795.6(b), the Vehicle must have been under repair for more than five of the seven years Plaintiff has owned it—

7

an implausible proposition. Such a fact was not pled nor can it be reasonably inferred. Thus, the "repair doctrine" cannot rescue Plaintiff's time-barred claim against Citrus Motors.

Finally, Plaintiff argues that her implied warranty claim against Citrus Motors might be tolled under the doctrine of fraudulent concealment. *See* Mot. at 11. "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). Courts are in general agreement "that fraudulent concealment tolling applies to claims brought under the Song-Beverly Act." *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016). To establish fraudulent concealment, a plaintiff must "(1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts." *Id.* (citation omitted). Plaintiff pleads no such facts in the complaint. Nor does she give any indication in her motion that she would be able to plausibly allege fraudulent concealment if given an opportunity to amend her complaint. Plaintiff does not allege, for example, that the defects afflicting her Vehicle are systematic or widespread such that an inference can be made that Defendants were aware of a systemic defect and intentionally withheld information from consumers. *Compare, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1190 (C.D. Cal. 2010) (plaintiffs adequately stated claim that Toyota fraudulently concealed sudden acceleration defect by alleging the defect caused "thousands of crashes" and prompted "technical service bulletins," "tens of thousands of consumer complaints," and dealership reports that "were not disclosed to consumers"). In the absence of any basis for inferring that Citrus Motors fraudulently concealed the Vehicle's defects, the Court cannot find any reasonable possibility that the doctrine of fraudulent concealment operates here to toll Plaintiff's implied warranty claim.

In sum, Ford has met its high burden of showing that Plaintiff's claim against Citrus Motors is time-barred, and that Plaintiff cannot prevail on her arguments that the claim was tolled. *See GranCare*, 889 F.3d at 548. Citrus Motors was thus fraudulently joined. Without Citrus

1 Motors, the parties in this case are completely diverse since Plaintiff is a citizen of California,[2] and
2 Ford is a citizen of Michigan and Delaware.

B. Amount in Controversy

"Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). The amount in controversy includes the amount of damages in dispute as well as attorney's fees, if authorized by statute. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089,1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Any doubt regarding the amount should be resolved in favor of remand. *Matheson*, 319 F.3d at 1090 (footnote omitted).

The parties' disagreement over the amount in controversy arises primarily from the ambiguity in the complaint regarding damages. The complaint alleges that "Plaintiff suffered damages in a sum to be proven at trial in an amount not less than $25,001.00." Compl. ¶ 13. The complaint also alleges that "Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c)." *Id.* ¶ 14. Ford interprets these allegations to mean that Plaintiff is seeking at least $25,001 in actual damages *plus* twice that amount in civil penalties, which combined would exceed $75,000. Opp. at 12–13. Plaintiff, on the other hand, maintains that the $25,001 figure in the complaint "references Plaintiff's *total* damages, which include *both* actual damages *and* civil penalties." Mot. at 13 (emphases in original).

---

[2] Although Ford's notice of removal alleges that Plaintiff is a citizen of California, Docket No. 1 ¶ 18, Plaintiff argues that Ford lacks a basis for so alleging because her complaint states only that "Plaintiff is a resident of Riverside County, California," without expressly identifying her citizenship, Compl. ¶ 2. But "[c]ourts within this district have . . . found that diversity jurisdiction exists based on assertions of residence, absent evidence about domicile to the contrary." *Ervin v. Ballard Marine Constr., Inc.*, No. 16-CV-02931-WHO, 2016 WL 4239710, at *3 (N.D. Cal. Aug. 11, 2016) (collecting cases). Because there is no evidence in the record suggesting that Plaintiff is not domiciled in California, her California residence provides a factual basis for Ford's allegation that she is a California citizen.

The Court would ordinarily credit Plaintiff's explanation that the $25,001 figure represents the combined total of actual damages and civil penalties. *See Matheson*, 319 F.3d at 1090 (any doubt regarding the amount in controversy is resolved in favor of remand). Here, however, Plaintiff's characterization of her damages claim is contradicted by her own pleadings. In the complaint, Plaintiff asserts that she "seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price" of the Vehicle. Compl. ¶ 20. The contract price of the Vehicle was $47,721.34. Docket No. 15-1, Exh. 2. Plaintiff's claim for the full contract price of her Vehicle thus resolves any ambiguity regarding damages—the allegation that she "suffered damages in a sum to be proven at trial in an amount not less than $25,001.00" must be interpreted to refer to actual damages exclusive of civil penalties. Compl. ¶ 13. Once civil penalties are added (as well as attorney's fees), the total amount in controversy exceeds $75,000.

Accordingly, Ford has established both the diversity and amount-in-controversy prerequisites to invoking this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

## IV. CONCLUSION

Plaintiff's motion to remand is **DENIED**, and Citrus Motors, as a fraudulently joined party, is **DISMISSED** from this action.

This order disposes of Docket No. 13.

**IT IS SO ORDERED**.

Dated: July 3, 2019

_____
EDWARD M. CHEN
United States District Judge