UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS COVARRUBIAS,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants. | Case No. 19-cv-01832-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Docket No. 63 |

Plaintiff Alexis Covarrubias filed this lemon law action under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790–1795.8, against Defendants Ford Motor Company ("Ford") and Citrus Motors Ontario, Inc. ("Citrus Motors"), over issues with her 2012 Ford F-150 vehicle (the "Vehicle"). On October 28, 2020, the parties reached a settlement pursuant to Federal Rule of Civil Procedure 68, and settlement funds were received by Plaintiff's counsel on January 5, 2021. *See* Docket No. 59 (Apr. 1, 2021 Joint Status Report). Pending before the Court is Plaintiff's subsequent motion for attorneys' fees and costs. *See* Docket No. 63 ("Mot.")

For the following reasons, the Court **GRANTS in Part** and **DENIES in part** the Plaintiff's motion for attorneys' fees and costs.

## I. BACKGROUND

A. Facts

Plaintiff's state court complaint alleges that on June 28, 2012, she purchased the Vehicle from Citrus Motors. Docket No. 1-1 ("Compl.") ¶ 8. In connection with the purchase, Plaintiff received an express written warranty from Ford. *Id.* ¶ 9. In the warranty, which included a three-

1  year/36,000 mile bumper-to-bumper warranty and a five-year/60,000 mile powertrain warranty.
2  *Id.* Ford undertook to maintain the utility or performance of the Vehicle or to provide
3  compensation if there is a failure in utility or performance for a specified period of time. *Id.*
4  Under the terms of the warranty, if the Vehicle developed a defect and Plaintiff presented the
5  Vehicle to Ford's representative, the representative would repair the defect. *Id.*

6  Plaintiff's Vehicle developed numerous defects during the warranty period that
7  substantially impaired the use, value, or safety of the Vehicle, including defects related to the
8  engine, transmission, and electrical system. *Id.* ¶ 10. Ford and its representatives "have been
9  unable to service or repair the Vehicle to conform to the applicable express warranties after a
10 reasonable number of opportunities." *Id.* ¶ 11. Despite this, Ford did not "promptly replace the
11 Vehicle or make restitution to Plaintiff." *Id.* Plaintiff's complaint asserts various causes of action
12 against Ford, including breach of implied warranty in violation of the Song-Beverly Act. *See id.*
13 ¶¶ 8–33. The same cause of action for breach of implied warranty was the only claim asserted
14 against Citrus Motors. *See id.* ¶¶ 29–33.

15 B. Procedural History

16 Plaintiff filed her complaint on February 25, 2019 against Defendants in the Santa Clara
17 Superior Court. On April 4, 2019, Ford filed a notice of removal based on diversity jurisdiction.
18 Docket No. 1 at 1. Plaintiff moved to remand this case to state court on May 10, 2019, Docket
19 No. 13, which the Court swiftly denied on July 3, 2019, because Ford "met its high burden of
20 showing that Plaintiff's claim against Citrus Motors [was] time-barred, and that Plaintiff [could
21 not] prevail on her arguments that the claim was tolled," Docket No. 24 ("Remand Order") at 8.

22 On October 28, 2020, the parties reached a settlement pursuant to Federal Rule of Civil
23 Procedure 68. Apr. 1, 2021 Joint Status Report at 2. Plaintiff surrendered the Vehicle on
24 December 29, 2020, and Plaintiff's counsel received the settlement funds on January 5, 2021. *Id.*
25 Plaintiff filed the instant motion for attorneys' fees and costs on June 23, 2021. Mot. The motion
26 seeks an award of $ 66,719.20 to Strategic Legal Practice, APC (SLP), the law firm that
27 represented Plaintiff.

28

2

## II.     DISCUSSION

State law governs awards of attorneys' fees in diversity cases. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 260 (1975) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."); *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorneys' fees, and the procedure for requesting an award of attorney fees is governed by federal law."). Under California law, buyers who prevail in an action under the Song-Beverly Act are entitled to "the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

A party is a prevailing party if the court, guided by equitable principles, decides that the party has achieved its "main litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150–51 (Ct. App. 2006); *see also Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1262 (Ct. App. 2012) ("[C]onsumers who successfully achieve the goals of their litigation through a compromise agreement [do] not lose their statutory right to fees and costs."). Ford does not dispute that Plaintiff, as the prevailing party in this action, is entitled to recoup reasonable attorneys' fees, costs, and expenses under the Song-Beverly Act. *See generally* Docket No. 69 ("Opp'n"); *see also* Cal. Civ. Code § 1794(d). Therefore, the only question here is whether Plaintiff's request for $66,719.20 in attorneys' fees and costs is reasonable. To answer this question, the Court must conduct a lodestar calculation.[1]

A.     Lodestar Calculation

Courts calculate attorneys' fees under section 1794(d) using the "lodestar adjustment

---

[1] Plaintiff filed eleven boilerplate evidentiary objections to several paragraphs in Charles F. Harlow's declaration in support of Ford's opposition to Plaintiff's motion. *See* Docket No. 73. The Court need not rule on these objections because it need not rely on Mr. Harlow's declaration to resolve Plaintiff's motion.

3

method." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.,* 144 Cal. App. 4th 785, 818 (Ct. App. 2006). The lodestar figure consists of "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000). A reasonable hourly rate is defined as "that prevailing in the community for similar work." *Id.* The Song-Beverly Act also allows courts to apply a multiplier where appropriate under the lodestar method. *Robertson*, 144 Cal. App. 4th at 819.

1. Hours Reasonably Expended

For the purposes of calculating the lodestar figure, the Court has wide discretion in determining the number of hours reasonably expended. *See Ketchum v. Moses*, 17 P.3d 735, 743 (Cal. 2001) ('We acknowledge[] the discretion of the trial court in setting attorney fees."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("We reemphasize that the district court has discretion in determining the amount of a fee award . . . in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."). "[A]bsent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours *reasonably* spent." *Serrano v. Unruh*, 652 P.2d 985, 986 (Cal. 1982) (In Bank) (emphasis added); *Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours *reasonably expended* on the litigation." (emphasis added)). The prevailing party has the burden of "showing that the fees incurred were allowable, were reasonably necessary to conduct the litigation, and were reasonable in amount." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Serrano*, 652 P.2d at 994; *Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that . . . are excessive, redundant, or otherwise unnecessary."). Reasonably expended time is generally time that "could reasonably have been billed to a private client." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008).

Plaintiff contends her attorneys "reasonably expended" 105.2 hours over the course of almost two years pursuing her claims in the instant case. Mot. at 8. Ford asks the Court to make

4

only three discreet reductions. First, Ford argues Plaintiff's attorneys "unnecessarily billed 6.1 hours to prepare responses to Ford's written discovery only days before accepting Ford's prior Rule 68 offer." Opp'n at 3. The record confirms that the parties exchanged written discovery requests and responses in February 2020. Docket No. 70 ("Harlow Decl.") ¶ 5. On October 14, 2020, Ford made a Rule 68 settlement offer of $149,164.02. *Id.* ¶ 6. A week later, on October 20 and 21, 2020, Plaintiff's attorneys billed 6.1 hours for "drafting discovery responses for service to Ford's RFPs, SROGs, and RFAs." *Id* ¶ 9. Then Plaintiff accepted the Rule 68 settlement offer a week later, on October 28, 2020. *Id.* ¶ 6. Despite Plaintiff's counsel's delay in responding to the February 2020 discovery requests, the Court will not exclude the 6.1 hours billed on October 20 and 21 because there are plenty of reasonable explanations as to why Plaintiff's counsel might have started drafting responses days before their client accepted a settlement offer. For example, it is entirely possible that they were waiting to hear back from Plaintiff about the offer and wanted to get a head start on responding to Ford's discovery requests in case she declined the offer. Furthermore, Plaintiff's counsel had an obligation to prepare these discovery responses—even if their client was about to accept a settlement offer—because the responses were due. *See Goglin v. BMW of N. Am.*, 208 Cal. Rptr. 3d 646, 655 (Ct. App. 2016) ("[U]ntil the case actually settled, Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements. . . . We, therefore, cannot conclude the court abused its discretion in finding the time spent by Goglin's counsel on litigation activities was reasonable."); *Peak-Las Positas Partners v. Bollag*, 90 Cal. Rptr. 3d 775, 787 (Ct. App. 2009), *as modified* (Mar. 26, 2009) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (quoting *Int'l Longshoremen's & Warehousemen's Union v. L.A. Export Terminal, Inc.*, 81 Cal. Rptr. 2d 456 (Ct. App. 1999)); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 653–54 (Ct. App. 1990) ("Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries."). If Ford wanted to avoid paying for Plaintiff's time in responding to its discovery requests, it could have withdrawn those requests, stipulated to a stay of discovery while the parties negotiated the Rule 68 settlement, or granted

5

Plaintiff an extension to respond.

Second, Ford contends Plaintiff's counsel wasted 25 hours on a frivolous remand motion. Opp'n at 3–4. But "[a]fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Sundance v. Mun. Ct.*, 192 Cal. App. 3d 268, 274 (Ct. App. 1987). "[L]itigation may involve a series of [unsuccessful] attacks on an opponent's case. . . . Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim." *Akins v. Enter. Rent-A-Car Co. of S.F.*, 79 Cal. App. 4th 1127, 1133 (Ct. App. 2000). Here, the Court denied Plaintiff's remand motion—the only motion litigated in this action—because "Citrus Motors was fraudulently joined," such that "[w]ithout Citrus Motors, the parties in this case are completely diverse." Remand Order at 1, 8. The Court reasoned that "Ford met its high burden of showing that Plaintiff's claim against Citrus Motors [was] time-barred, and that Plaintiff cannot prevail on her arguments that the claim was tolled." *Id.* at 8. Although the Court used the term "fraudulently joined," there was no finding that Plaintiff's counsel joined Citrus Motors knowing that Plaintiff's claims against it were time barred. In other words, there was no evidence of bad faith or frivolity. To the contrary, Plaintiff's counsel made several arguments in support of Plaintiff's remand motion that—although unsuccessful—were neither frivolous nor made in bad faith. *See Sundance*, 192 Cal. App. 3d at 274 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."). The Court therefore cannot conclude that it was unreasonable for Plaintiff's counsel to spend 25 hours litigating the remand motion simply because it was unsuccessful.

Ford finally asks the Court to reduce the 13.4 hours that Plaintiff's counsel spent in drafting "Plaintiff's standard, boilerplate fee motion," as well as the $3,500 Plaintiff anticipates it will cost to reply to Ford's opposition. Opp'n at 4. Generally, fees related to the preparation and defense of a motion for attorneys' fees are recoverable. *Ketchum*, 17 P.3d at 747–48 ("[A]n award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees."); *Serrano*, 652 P.2d at 997 ("[A]bsent circumstances rendering the award unjust, fees recoverable . . . ordinarily include compensation

for all hours reasonably spent, including those necessary to establish and defend the fee claim."). Other than Ford's unsupported assertion that the motion is "boilerplate," there is nothing on the record to suggest that it was unreasonable for Plaintiff's counsel to spend this amount of time preparing the underlying motion. Under virtually identical circumstances, Judge Corley also awarded 13.4 hours of fees for preparing the fees motion in *Cardoso v. FCA US LLC* because, "while this amount is a bit more than the Court would expect for a motion such as this, the Court declines to reduce the amount absent a showing that the motion is a template of one previously used by counsel." No. 20-CV-02250-JSC, 2021 WL 1176532, at *5 (N.D. Cal. Mar. 29, 2021); *see also Pollard v. FCA US LLC*, No. 817CV00591JLSJCG, 2020 WL 57270, at *5 (C.D. Cal. Jan. 3, 2020), *appeal dismissed*, No. 20-55128, 2020 WL 2204270 (9th Cir. Mar. 25, 2020) (finding that 14.5 hours spent on a motion for attorney's fees under the Song-Beverly Act was unreasonable given that it was substantially identical to an earlier motion). Because Ford has made no such showing here, the Court cannot conclude that Plaintiff's counsel spent too long drafting the underlying motion.

Accordingly, the Court declines to reduce the number of hours for which Plaintiff's attorneys are seeking compensation.

2. Reasonable Hourly Rate

To determine whether Plaintiff's counsel's hourly rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum*, 17 P.3d at 742 (quoting *Serrano*, 652 P.2d. at 998, n. 31). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). "The most analogous evidence to fees charged by a private law firm would be fees sought and deemed reasonable by courts in other cases." *Margolin v. Reg'l Plan. Com.*, 134 Cal. App. 3d 999, 1005 (Ct. App. 1982). "A number of courts, including courts in this District, have also found that the United States Consumer Law Attorney Fee Survey Report may be used as evidence of prevailing rates." *Bratton v. FCA US LLC*, No. 17-CV-01458-JCS, 2018

7

1  WL 5270581, at *4 (N.D. Cal. Oct. 22, 2018) (collecting cases). In addition, Civil Local Rule 54-
2  5(b)(3) requires the party seeking fees to submit "[a] brief description of relevant qualifications
3  and experience and a statement of the customary hourly charges of each such person or of
4  comparable prevailing hourly rates or other indication of value of the services."

Here, Plaintiff complied with Local Rule 54-5(b)(3) by submitting a declaration from SLP's Managing Partner, Payam Shahian, describing the relevant qualifications and experience of the attorneys working on her case. *See generally* Docket No. 63-7 ("Shahian Decl."). According to Mr. Shahian's declaration, Plaintiff's attorneys customarily charge the following rates for their services:

| Attorney | Law School Class | 2019 rate | 2020 rate | 2021 rate |
|---|---|---|---|---|
| Anh Nguyen | 2011 | $385 per hour | $435 per hour | $460 per hour |
| Mark Gibson | 2008 | $435 per hour | | |
| Jacob Cutler | 2009 | $435 per hour | $460 per hour | |
| Tionna Dolin | 2014 | $395 per hour | | $450 per hour |
| Jason Clark | 2007 | | | $550 per hour |

Mot. at 7; Docket No. 63-7 ("Shahian Decl.") ¶¶ 29, 31, 33, 35, 37. Plaintiff contends these hourly rates are appropriate because federal courts in California have recently awarded fees at the same or higher rates to these attorneys and other attorneys with similar experience. To show this, Mr. Shahian's declaration lists numerous lemon law cases approving comparable or even higher rates for these SLP attorneys and other attorneys with similar experience. *See* Docket No. 63-7 ("Shahian Decl.") ¶ 30 (listing cases for Mr. Nguyen); *Id.* ¶ 36 (listing cases for Mr. Gibson); *Id.* ¶ 32 (listing cases for Mr. Cutler); *Id.* ¶ 38 (listing cases for Ms. Dolin); *Id.* ¶ 34 (listing cases for Mr. Clark); Docket No. 71 ("Reply") at 5 (listing cases for SLP).

Ford makes three unavailing arguments as to why these rates are unreasonable. First, it argues that "Plaintiff's list [of cases] does not include the likely numerous cases in which he was awarded significantly less than the rates claimed in this case." *See* Opp'n at 5. But this is pure speculation. Ford does not cite a single case where a Court has reduced SLP's rates or approved lower rates for attorneys with comparable experience. The Court therefore cannot credit this unsupported assertion.

8

Second, Ford attacks the cases cited in Mr. Shahian's declaration because "none are Northern District cases and only three are from Bay Area counties." *Id.* at 6. This is true, most of the cases cited in Mr. Shahian's declaration are from the Central and Southern Districts of California or from the Los Angeles Superior Court. The problem with this argument is that Ford does not present any evidence suggesting the rates attorneys are paid in this District are not comparable to those paid to attorneys in the Central or Southern Districts of California. If anything, common sense would suggest otherwise, considering the Bay Area has one of the highest costs of living in not just the state, but the country.

In addition, judges in this District have recently approved similar rates for attorneys with similar experience litigating lemon law cases. For example, in March of this year Judge Corley concluded that it was reasonable for an associate with six to ten years of experience to bill at $340 per hour and for two partners with longer experience to bill at $545 per hour and $624 per hour, respectively. *See Cardoso*, 2021 WL 1176532, at *2–*4. In doing so, Judge Corley cited the United States Consumer Law Attorney Fee Survey Report, which stated that "[t]he median rate for California cases is $450/hour." *Id.* at *3. Moreover, "the Metropolitan area tables for San Francisco contained in the Survey Report reflect an average hourly rate for consumer attorneys in San Francisco with 6-10 years of experiences such as [Plaintiff's attorneys] is $450/hour." *Id.* Judge Corley's decision in *Cardoso* and the report it relies on establish that the rates Plaintiff's attorneys care requesting in the instant case are reasonable.

Third, and finally, Ford suggests Plaintiff's counsel should get paid what Ford pays its counsel: "between $225 and $280 per hour." Opp'n at 6. The Court rejects this argument because Ford pays its counsel on an hourly basis, whereas Plaintiff's counsel work on a contingency-fee basis. *See Warren v. Kia Motors Am., Inc.*, 241 Cal. Rptr. 3d 263, 278 (Ct. App .2018) ("Kia claimed the hourly rates of Warren's *plaintiff's* attorneys should be limited to the lower hourly rates charged by Kia's *defense attorneys*. This was not a good comparison, given that Warren's plaintiff's attorneys' work pursuant to contingency arrangements and Kia's defense attorneys do not.").

Accordingly, the Court concludes that Plaintiff has met her burden of demonstrating that

9

1   her attorneys' hourly rates are reasonable.

       3.      <u>Lodestar Multiplier</u>

The California Supreme Court has instructed courts to consider the following factors in adjusting the lodestar using a multiplier:

> (1) [T]he novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. . . . The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Ketchum*, 17 P.3d at 741. Conversely, "[e]ven where a party prevails on a single cause of action for which he or she is entitled to attorney fees, if the court determines the attorney's work on that claim is duplicative or excessive, the court has broad discretion to apply a *negative multiplier* to the lodestar amount." *Graciano*, 144 Cal. App. 4th at 161.

Plaintiff's request that the Court apply a 1.35 lodestar multiplier to her attorneys' fees is unwarranted under the *Ketchum* factors. The first and third factors weigh against a multiplier because this case did not involve any novel or complex issues, nor did it preclude other employment by SLP. The second factor is neutral because while Plaintiff's attorneys certainly obtained an excellent result for her, their own description of the facts suggest that she had a strong case. *See Cardoso*, 2021 WL 1176532, at *5. The third factor is therefore also neutral because the strength of Plaintiff's case "mak[es] the risk that counsel would receive nothing relatively small." *Id.* At bottom, this case did not "require extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for [Plaintiff's counsel's] services." 175 P.3d at 741.

Accordingly, the Court awards the lodestar amount without a multiplier, negative or positive.

B.    <u>Costs and Expenses</u>

Plaintiff seeks $3,420.27 in costs and expenses. Ford does not challenge these costs, which appear to be reasonable. *See* Cal. Civ. Code § 1794(d) ("If the buyer prevails in an action

under this section, the buyer shall be allowed by the court to recover . . . *costs and expenses* . . . determined by the court to have been *reasonably incurred* by the buyer in connection with the commencement and prosecution of such action." (emphases added)). Accordingly, the Court grants Plaintiff all of her counsel's costs and expenses.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion for attorneys' fees and costs and orders Ford to pay Plaintiff a total amount of $51,215.77, consisting of: (1) $44,295.50 in attorneys' fees for SLP; (2) $3,420.27 in costs and expenses for SLP; and (3) $3,500 in additional fees and costs for SLP associated with replying to Ford's opposition to the underlying motion.

This order disposes of Docket No. 63.

**IT IS SO ORDERED**.

Dated: August 10, 2021

_____
EDWARD M. CHEN
United States District Judge